UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROBERT SUAREZ,

                      Plaintiff,

    — against —

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

09-CV-338 (SLT)

**TOWNES, United States District Judge:**[1]

Robert Suarez ("Plaintiff"), brings this action under 42 U.S.C. §§ 405(g) to seek reversal of a final decision of the Commissioner of Social Security that he was not eligible for disability insurance benefits under the Social Security Act ("the Act"). Plaintiff asserts that he is disabled because of a back injury that he sustained while working as a grocery store manager. The Commissioner determined that although, Plaintiffs' medical conditions prevented him from performing his past relevant work, Plaintiff maintained a residual functional capacity to perform a full range of sedentary work with no postural activities. Based on these reasons, the Commissioner denied his claims for disability benefits. The Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking dismissal of Plaintiff's complaint.

For the reasons below, Commissioner's motion is denied and the case is remanded for further proceedings consistent with this opinion.

---

[1] The Court gratefully acknowledges the assistance of a student intern, Lancelot L. Esteibar of Cardozo School of Law, in the preparation of this Memorandum and Order.

1

## BACKGROUND

### I. Factual History

Plaintiff was born on April 7, 1959 and was 48 years old at the time the Commissioner's decision was rendered. Admin. R. ("A.R.") at 55, 285. He graduated high school and completed one year of trade school for business management and marketing. *Id.* at 64, 287. His past work experience includes employment as a grocery store manager, a messenger, and a security guard. *Id.* at 60. He maintains that he became disabled when working as a grocery store manager on July 30, 2002, due to a L5-S1 disc herniation[2] and disc desiccation[3] resulting when he picked up an eight foot rack with twenty-five gallons of water on it. *Id.* at 59.

On September 7, 2002, Plaintiff visited the emergency department of St. Vincent's Medical Center in Staten Island, New York, with complaints of back pain. *Id.* at 215-17. Plaintiff's examining physician, Dr. Jonathan Reyes, treated Plaintiff for a lumbar muscle strain and prescribed Cyclobenzaprene, a muscle relaxant, and Naprosyn, an anti-inflammatory medication. *Id.* at 216.

On October 17, 2002, Plaintiff met with Dr. Chinagandham Srinivasa Bhuphathi, an orthopedist, concerning his continued back pain. *Id.* at 91, 106, 206, 230, 261, 262. Plaintiff told Dr. Bhupathi that he had severe back pain that radiated from both legs which he related to his July 2002 injury. *Id.* Upon examination, Dr. Bhuphathi found reduced lumbar lordosis[4] and

---

[2] "Disc herniation" is "often referred to as a slipped disc" where there is a "rupturing of the tissue that separates the vertebral bones of the spinal column." *Available at* http://www.medterms.com/script/main/art.asp?articlekey=10661
[3] "Disc desiccation" or "desiccated disc" refers to a "disc with reduced water content, usually primarily of nuclear tissues." *Available at* http://www.asnr.org/spine_nomenclature/glossary.shtml.
[4] "Lumbar lordosis" refers to "a secondary curvature of the vertebral column, acquired postnatally as the upright posture is assumed when one learns to walk." *Available at* http://www.medilexicon.com/medicaldictionary.php?t=51337

2

muscle spasm in the lower back. *Id.* Dr. Bhupathi recommended physical therapy and a magnetic resonance imaging ("MRI") scan of the lumbosacral spine. *Id.*

On October 24, 2002, Dr. Bhupathi completed a form for the State of New York Workers Compensation Board, wherein he indicated that Plaintiff was totally disabled from his regular work. *Id.* at 93. However, Dr. Bhupathi did not comment, in line ten of the form, as to whether Plaintiff was capable of doing any other type of work. *Id.*

On January 3, 2003, Plaintiff visited the Cumberland Diagnostic and Treatment Center, complaining of back pain. *Id.* at 226. Plaintiff's examining physician, Dr. Maria J. Pablo, completed a note excusing Plaintiff from work that day, wherein she indicated that Plaintiff should not lift more than five to ten pounds. *Id.*

On January 23, 2003, Plaintiff visited, Dr. Bhupathi, for a follow-up appointment regarding the continued pain in his lower back and right leg. *Id.* at 92, 107, 207, 260. Dr. Bhupathi observed "significant paravertebral muscle spasms" with limited trunk motion and noted that authorization to perform an MRI on Plaintiff's back was still pending. *Id.* Plaintiff's neurological review was negative. *Id.*

On April 1, 2003, Plaintiff was prescribed Cyclobenzaprene and Naprosyn by Dr. Bhupathi. *Id.* at 107. Dr. Bhupathi also asked plaintiff's insurance carrier for a determination on his previous requests (October 24, 2002 and January 21, 2003) for authorization of an MRI and physical therapy. *Id.* at 202. Plaintiff did not appear for the next three appointments scheduled with Dr. Bhupathi in 2003. *Id.* at 107.

On November 18, 2003, Plaintiff was examined by a consultative orthopedic surgeon, Dr. Andrew B. Weiss, in connection with his workers compensation case. *Id.* at 100-02, 179-81, 255-57. Plaintiff informed Dr. Weiss that he had not had physical therapy, chiropractic care,

3

surgeries, or hospitalizations, for his back pain. *Id.* at 100. Plaintiff reported using Naprosyn on an as-needed basis. *Id.* Upon examination, Dr. Weiss concluded that Plaintiff's prognosis was good. *Id.* at 101. Dr. Weiss found no muscle spasm or tenderness, and the straight-leg raising ("SLR") and Patrick's tests were negative.[5] *Id.* Deep tendon reflexes, sensation, and motor strength were within normal limits. *Id.* Dr. Weiss diagnosed a sprain on the thoracolumbosacral spine,[6] which was "resolved by objective clinical criteria at the time of [the] evaluation." *Id.* He further noted that there was "no causally related disability noted by objective clinical criteria." *Id.*

On April 8, 2004, Plaintiff returned to Dr. Bhupathi, fourteen months after his last visit, and still complained of lower back pain, which was "not as prominent" in the right side. *Id.* at 108. Dr. Bhupathi found that Plaintiff still had paravertebral muscle spasm and limited trunk motion. *Id.* Dr. Bhupathi reported that Plaintiff's neurological examination findings were intact. *Id.* Dr. Bhupathi also noted that he was still awaiting authorization for the MRI and physical therapy. *Id.*

On October 20, 2004, Dr. Bhupathi mailed a request to plaintiff's insurance carrier seeking authorization for the MRI.[7] *Id.* at 108, 156, 259.

On October 26, 2004, Plaintiff visited Dr. Matthew J. Stern and underwent an MRI of the lumbosacral spine. *Id.* at 89-90, 105, 153-54, 250-251. Dr. Stern reported that the MRI revealed a left paracentral[8] disc herniation at the L5-S1 disc space abutting the thecal sac,[9] without

---

[5] "Patrick's test" is a test that "stresses the hip and sacroiliac joints. A positive test produces back, buttocks, or groin pain." *Available at* http://www.hughston.com/hha/a_15_1_1c.htm.
[6] "Thoracolumbosacral" is defined as, "of or relating to the thoracic and lumbar parts of the spinal column." *Available at* http://medical-dictionary.thefreedictionary.com/thoracolumbar.
[7] The insurance carrier for Plaintiff's employer apparently did not initially authorize the expense of the MRI. The insurance carrier was ordered to authorize an MRI of Plaintiff's back by the Worker's Compensation Board after Plaintiff appealed the denial to the Board. A.R. at 160-63.
[8] "Paracentral" is defined as, "In the right or left central zone of the vertebral canal." *Available at* http://www.asnr.org/spine_nomenclature/glossary.shtml.

definitive nerve root contact. *Id.* Dr. Stern also stated that there was an accompanying degenerative disc desiccation and no significant spinal canal or foraminal stenosis.[10] *Id.*

On November 23, 2004, Dr. Bhupathi noted that he had reviewed the October 2004 MRI. Dr. Bhupathi reported that the MRI showed pathology on the left side at the L5-S1 level, but that Plaintiff had no symptoms on the lower left extremity. *Id.* He observed that trunk motion continued to be limited due to pain and noted that Plaintiff would continue with the present management. *Id.*

On December 2, 2004, Dr. Bhupathi completed a second form for the State of New York Workers Compensation Board, wherein he indicated that Plaintiff was totally disabled from his regular work. *Id.* at 155, 169. Again, Dr. Bhupathi did not comment as to whether Plaintiff was capable of doing any other type of work. *Id.*

On December 16, 2004, Plaintiff was re-evaluated by consultative orthopedic surgeon, Dr. Weiss, in connection with the workers compensation case. *Id.* at 96-99, 146-48, 252-54. Plaintiff stated that he took medication, but was unable to provide its name. *Id.* Dr. Weiss noted that Plaintiff had not undergone physical therapy, chiropractic care, acupuncture, surgeries or hospitalizations for his back pain. *Id.* at 96. Upon examination, Dr. Weiss reported that he could not carry out a complete and adequate evaluation of Plaintiff's lumbosacral spine. *Id.* Dr. Weiss reported that Plaintiff refused to move his back more than ten degrees in any direction off neutral. *Id.* However, Dr. Weiss did note that the Plaintiff had subjective complaints of tenderness at L1 through L5. *Id.* In addition, Dr. Weiss stated that there was no spasm in that

---

[9] "Thecal sac" refers to "the name given for the elongated membraneous tube that extends from the brain to the end of the spine in which the spinal cord and nerve roots run. It is made up of – and is continuous with – the membrane that covers the brain." *Available at* http://www.my-spine.com/terminology-for-ct-scans-and-mri-scans-lumbar-region.html.
[10] "Foraminal stenosis" refers to when there "is the narrowing of the cervical disc space caused by enlargement of a joint (the uncinate process) in the spinal canal." *Available at* http://www.spine-health.com/glossary/f/foraminal-stenosis.

5

area, that the SLR and Patrick's test were negative bilaterally, and that the neurovascular status of the lower limbs were intact. *Id.* Dr. Weiss concluded that a diagnosis and prognosis must be deferred because of the Plaintiff's inability to fully cooperate with the examination. *Id.*

On January 19, 2006, Plaintiff returned to Dr. Bhupathi and reported having pain in the left lower back radiating to the left lower extremity. *Id.* at 109, 118, 120, 125, 258. Dr. Bhupathi noted that the neurologic examination was intact. *Id.* Dr. Bhupathi concluded that in view of Plaintiff's symptomatology, an authorization for pain management treatments was necessary. *Id.*

On January 23, 2006, Dr. Bhupathi completed a third form for the State of New York Workers Compensation Board, wherein he indicated that Plaintiff was totally disabled from his regular work. *Id.* at 124. Again, Dr. Bhupathi did not comment as to whether Plaintiff was capable of doing any other type of work. *Id.*

On July 5, 2007, Plaintiff returned for a follow-up visit with Dr. Bhupathi and complained of persistent pain in his lower back, which radiated down his lower left extremity. *Id.* at 110, 117-20, 258. Dr. Bhupathi noted that Plaintiff's physical findings were essentially unchanged and requested authorization from Plaintiff's insurance carrier for pain management treatments. *Id.* at 110.

On July 11, 2007, Dr. Bhupathi completed a fourth form for the State of New York Workers Compensation Board, wherein he indicated that Plaintiff was totally disabled from his regular work. *Id.* at 117. Again, Dr. Bhupathi did not comment as to whether Plaintiff was capable of doing any other type of work. *Id.*

On October 4, 2007, Plaintiff was examined consultatively, at the request of the SSA, by Dr. Mahendra K. Misra. *Id.* at 242-47. Plaintiff reported that he had not received any specific

6

treatment for his back pain, although surgery had been recommended. *Id.* Upon examination, Dr. Misra found that Plaintiff was in no acute distress. *Id.* Positive findings included some restriction of movement of the thoracolumbar spine and SLR movement on both sides. *Id.* Dr. Misra diagnosed Plaintiff with lumbosacral discogenic disease[11] with radiculopathy[12] more on the left side. *Id.* Dr. Misra concluded that based on the clinical evaluation and the Plaintiff's medical history, Plaintiff would "not be [able] to do task[s] which require prolong[ed] standing, sitting, walking, running, climbing, lifting, pulling or pushing." *Id.* Dr. Misra also reported that the prognosis was "guarded." *Id.*

On October 22, 2007, Plaintiff received a physical residual functional capacity ("RFC") assessment by disability examiner, A. Cofsky. *Id.* at 263-68. According to the assessment form, Plaintiff's primary diagnosis was "back disorder." *Id.* at 263. The assessment evaluated two areas, Plaintiff's exertional limitations[13] and non-exertional limitations.[14] The RFC assessment showed the following exertional limitations: occasional lifting and/or carrying of ten pounds; frequent lifting and/or carrying of less than ten pounds; standing and/or walking with normal breaks for a total of about six hours in an eight hour workday; and sitting with normal breaks for a total of about six hours in an eight hour work day. *Id.* at 264. The examiner reported that these findings were based on the following facts: Plaintiff's work related injury, complaints of back pain, his limping gait walk, no motor or sensory abnormalities, normal range of motion "ROM" in the cervical spine and upper extremities, limited ROM in the LS spine and knee joints, limited

---

[11] "Discogenic disease" also known as "degenerative disc disease" refers to "a deterioration in disc structure and function, which commonly causes pain and loss of function." *Available at* www.spinal-cord.org/classification-terminology.htm.
[12] "Radiculopathy" refers to "Any disease of the spinal nerve roots and spinal nerves." *Available at* http://www.medterms.com/script/main/art.asp?articlekey=14161.
[13] "Exertional limitations" include "the ability to sit, stand, walk, lift, carry, push, and pull." 20 C.F.R. § 404.1569(a) (1996).
[14] "Nonexertional limitations" include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569(a)(c)(vi) (1996).

SLR, and some evidence of muscle spasm in the paravertebral LS muscles with no muscle atrophy. *Id.*

The RFC assessment also showed the following non-exertional limitations: occasional postural limitations when climbing, balancing, stooping, kneeling, crouching and crawling, and limited ROM in the LS spine and knee joints. *Id.* at 265. However, the RFC assessment showed no manipulative, visual, communicative or environmental limitations. *Id.* at 265-66. The examiner concluded although his findings were consistent with Dr. Misra's evaluation, it could not be adopted because it was not from a treating source. *Id.*

On August 24, 2008, Plaintiff was examined consultatively by an orthopedic surgeon, Dr. Menachem Y. Epstein, in connection with his workers compensation case. *Id.* at 269-74. Plaintiff asserted that he continued to experience lower back pain, left leg pain, and experienced numbness and tingling in his toes when bending over. *Id.* Plaintiff also reported that he had a back brace, which he used at home, and that his current medications included Propoxyphene[15] and Acetaminophen.[16] *Id.* Plaintiff stated that he started working for Top Tomato Company in New Jersey as a cook, but had to stop after two weeks because his back went out. *Id.* Upon examination, Dr. Epstein found Plaintiff to be "alert and cooperative," that he walked with a waddle gait pattern,[17] and that he declined to walk on his heels and toes. *Id.* Dr. Epstein noted that the examination was partially consistent with Plaintiff's complaints, but there were no overt signs of a musculoskeletal or neurological impairment. *Id.* Dr. Epstein diagnosed Plaintiff with chronic back and extremity pain, resistance to motion, with no overt neurological deficit. *Id.* Dr.

---

[15] "Propoxyphene" refers to an "opioid medicine that has been marketed in approved drugs such as Darvon and Darvocet since 1957. Propoxyphene is used to relieve mild to moderate pain." *Available at* http://www.fda.gov/Drugs/DrugSafety/PostmarketDrugSafetyInformationforPatientsandProviders/ucm170268.htm.
[16] "Acetaminophen" refers to a "pain-relieving and fever-reducing drug found in many over-the-counter medications." *Available at* http://www.urmc.rochester.edu/encyclopedia/content.cfm?pageid=P02821.
[17] "Waddle gait pattern" refers to an "exaggerated alternation of lateral trunk movements with exaggerated elevation of the hip." *Available at* http://medical-dictionary.thefreedictionary.com/gait.

Epstein opined that Plaintiff would not be able to return to work as a cook, but that sedentary work was possible. *Id.* Dr. Epstein also thought that Plaintiff could not lift over fifteen pounds or perform activities that required continuous bending or twisting of the spine. *Id.* Dr. Epstein did not recommend physical therapy, but suggested that the carrier authorize another MRI of the lumbosacral spine and that Plaintiff receive pain management. *Id.*

## II. Procedural History

On August 1, 2007, Plaintiff applied for disability insurance benefits. His application was initially denied and a request for a hearing was timely filed by Plaintiff. Plaintiff appeared and testified at a hearing before administrative law judge Robert Dorf ("ALJ") on July 7, 2008. *Id.* at 277-296. He was represented by counsel during the hearing. On October 1, 2008, the ALJ issued a written opinion denying Plaintiff's application for disability benefits, holding that he was not under a disability for purposes of the Act. *Id.* at 12-22. The ALJ's decision became the final decision of the Commission when the Appeals Council denied Plaintiff's request for a review on November 20, 2008. *Id.* at 5-7. Plaintiff commenced the instant action on January 20, 2009.

## DISCUSSION

## I. Legal Standards

### A. Standard of Review

This Court may set aside an ALJ's decision only where it is based upon legal error or where its factual findings are not supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177

F.3d 128, 132 (2d Cir. 1999) (internal quotation marks omitted). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

This Court also reviews the ALJ's decision to determine whether the ALJ applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of law has been made that might have affected the disposition of the case, this Court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.'" *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (quoting *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). This Court reviews questions of law *de novo*. *Id*.

### B. Standard for Entitlement to Benefits

In order to establish entitlement to benefits under the Act, a claimant must establish that he has a "disability." *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Balsamo*, 142 F.3d at 79.

In evaluating a claim for disability benefits, the ALJ must follow a five-step sequential analysis set out in the regulations governing the administration of Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *Diaz v. Shalala*, 59 F.3d 307, 312 n.2 (2d Cir. 1995); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers

whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467) (alterations and omission in original). The claimant bears the burden of proof in the first four steps of the inquiry, but the Commissioner bears the burden in the fifth step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo*, 142 F.3d at 80).

## II. The ALJ's Determination

In this case, the ALJ applied the five-step analysis and concluded that Plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since July 30, 2002. *Id.* at 17. At step two, the ALJ found that Plaintiff's back impairment, degenerative disc disease and herniated disc, was a severe impairment. *Id.* at 18. At step three, the ALJ determined that those impairments did not meet or medically equal any of the listed impairments in Appendix 1 of the regulations. *Id.* at 18. Before turning to steps four and five, the ALJ found that, despite his impairments, Plaintiff was able to "stand/walk for two hours and sit for six hours, but [could not] perform postural activities," *id.* at 19; therefore, the ALJ concluded that Plaintiff had the RFC to perform a full range of sedentary work[18] with no postural activities. *Id.* Applying the RFC, the ALJ found, at

---

[18] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). Sedentary work also requires that an individual be able to sit a total of up to six hours during an eight-hour workday. *Id.* Social Security Ruling ("SSR") 96-9p.

11

step four, that Plaintiff could not return to his past relevant work as a grocery store manager or security guard because the requirements of those jobs exceeded Plaintiff's RFC. *Id.* at 21. The ALJ was therefore required to proceed to step five of the analysis. At step five, the ALJ found that Plaintiff's RFC allowed him to perform other work that existed in significant numbers in the national economy. *Id.* at 22. The ALJ determined that Medical-Vocational Rules 202.28 (in 20 C.F.R. § 404, subpt. P, app. 2) (the "grids"), directly supports a finding of not disabled. *Id.* at 22.

## III. Analysis

The ALJ's denial of Plaintiff's SSI disability claim hinged primarily upon his determination that Plaintiff could find a job in the national economy. *Id.* To substantiate this determination under step five of the five-step sequential SSI analysis, the ALJ found that Plaintiff retained the RFC to perform sedentary work, which was limited to no postural activities. *Id.* at 19. Because of Plaintiff's RFC, the ALJ also dismissed Plaintiff's testimony regarding his subjective complaints of pain. *Id.* at 20. In this case, the critical question upon review is whether or not the ALJ appropriately evaluated plaintiff's RFC in light of the evidence in the administrative record. However, based on the administrative record, the ALJ did not fulfill this obligation. Therefore, this Court finds that the ALJ's decision to deny Plaintiff benefits was not supported by substantial evidence and remands this case based on the findings below.

### A. Residual Functional Capacity

RFC is defined as "what an individual can still do despite his or her limitations." *Abdus-Sabur v. SSA*, No. 06-CV-4934 (SLT), 2009 WL 5178439, at *9 (E.D.N.Y. Dec. 31, 2009) (citing Soc. Sec. Ruling ("SSR") No. 96-8p, 1996 WL 374184 (S.S.A. 1996). In the instant case, the ALJ primarily relied upon three medical opinions in order to assess Plaintiff's RFC and conclude that Plaintiff was not disabled within the meaning of the Act: (1) Plaintiff's orthopedist,

Dr. Bhupathi;[19] (2) Workers Compensation examiner, Dr. Weiss; and (3) SSA consultative examiner, Dr. Misra. A.R. at 20. The Commissioner's regulations state that, unless a treating source's opinion is given controlling weight, the ALJ must consider the following factors in deciding the weight provided to any medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See* 20 C.F.R. § 416.927(d)(2). In addition, Social Security Ruling 96-8p, 1996 WL 374184, at *7, requires that, "the adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."

Based on the record, the ALJ failed to consider and resolve material inconsistencies and ambiguities between medical opinions, and therefore, substantial evidence does not support the ALJ's determination that plaintiff was not disabled. First, the ALJ should not have afforded substantial weight to Dr. Weiss's opinion when assessing Plaintiff's RFC and concluding that Plaintiff was not disabled. The ALJ argues that Dr. Weiss's reports "are significant because they take note of the claimant's relative lack of treatment with physical therapy or chiropractic care" and since "Dr. Weiss...found, based on his first examination, [that] the claimant's prognosis [w]as good and that he had achieved the maximum medical improvement." *Id.* at 20. However, this reliance is improper without additional explanation. Social Security Ruling 96-7p, 1996 WL 374186, at *7, states that the ALJ "must not draw any inferences about an individual's...functional effects from a failure to seek or pursue regular medical treatment

---

[19] The ALJ placed "no weight" on Dr. Bhupathi's opinion in assessing RFC because Dr. Bhupathi performed no analysis of Plaintiff's functional abilities due to his back disorder or the severity of his impairment. A.R. at 20. Indeed, the ALJ correctly attempted to have such evidence placed in the record. The ALJ left the record open until August 8, 2008, in order to allow Plaintiff's attorney to obtain current medical evaluations from Dr. Bhupathi regarding Plaintiff's RFC. *Id.* at 15, 22. At the request of Plaintiff, the ALJ also extended the time to submit additional reports to August 22, 2008. *Id.* However, the ALJ never received additional evidence from Plaintiff or his counsel. *Id.* Thus, on this issue, the ALJ fulfilled his obligation to develop the record. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.").

13

without first considering any explanations that the individual may provide, or other information in the case record, that may explain...[the] failure to seek medical treatment." In this case, it was improper for the ALJ to afford substantial weight to Dr. Weiss's opinion without first addressing two discrepancies in the record. First, the ALJ did not address how he could rely on Dr. Weiss's note, regarding Plaintiff's lack of physical therapy, to support the conclusion that Plaintiff failed to seek medical treatment when it was Dr. Weiss who was responsible for assisting in Plaintiff's initial denial of a lumbosacral MRI and continued denial of physical therapy. According to the record, Plaintiff's orthopedist, Dr. Bhupathi, requested approval for physical therapy and a lumbosacral MRI in October 2002 and January 2003. A.R. at 106-07. In April 2003, Dr. Bhupathi completed a form requesting a determination on his previous requests. *Id.* at 202. However, in November 2003, Dr. Weiss recommended against authorizing the lumbosacral MRI and reported that there was "no need for physical therapy" during Plaintiff's first visit with him. *Id.* at 180. As a result of Dr. Weiss's recommendations as a Worker's Compensation examiner, Dr. Bhupathi's repeated requests for authorization of an MRI and physical therapy were denied. In fact, Plaintiff only received authorization for an MRI after a successful appeal with the Worker's Compensation Board. *Id.* at 160-63. Therefore, unless the ALJ can provide an adequate explanation for this discrepancy, Dr. Weiss's note, regarding Plaintiff's lack of medical treatment during Plaintiff's second visit with him in December 2004, should not be afforded substantial weight because his initial recommendation prevented Plaintiff from receiving physical therapy in the first place.

In addition, the ALJ also fails to provide adequate explanation for why he relied on Dr. Weiss's April 2003 prognosis of "good," in light of the fact that the report is outdated and inconsistent with Dr. Misra's October 2007 report. After review of the record, the ALJ should
14

have noted that Dr. Weiss's reports of Plaintiff's negative SLR tests and no muscle spasms, during both of Plaintiff's visits with Dr. Weiss, were inconsistent with Dr. Misra's recent evaluation. In October 2007, Dr. Misra reported that Plaintiff's prognosis was "guarded" and that there was "evidence of muscle spasm in the paravertebral lumbosacral muscles" and "restriction in the SLR's on both the sides." *Id.* at 244-45. Moreover, by way of the ALJ's own logic, which assigned "diminished weight" to Plaintiff's 2004 MRI, because it was taken "almost four years ago" and because of Dr. Misra's more "recent consultative examination," *id.* at 21, the ALJ should similarly have assigned "diminished weight" to Dr. Weiss's five-year-old report. Therefore, because Dr. Weiss's opinion is both outdated and inconsistent with Dr. Misra's more recent findings, the propositions which the ALJ relied on Dr. Weiss's opinion for when determining Plaintiff's RFC should not have been afforded substantial weight without further explanation.

Second, the ALJ did not adequately resolve how Dr. Misra's finding, that Plaintiff could not perform tasks that require either "prolonged" sitting and standing, complies with the requirements of sedentary work under the Act. Dr. Misra diagnosed Plaintiff with lumbosacral discogenic disease with radiculopathy. A.R. at 242-47. In his medical source statement, Dr. Misra concluded that, "[Plaintiff] will not be [able] to do task[s] which require prolong[ed] standing, sitting, walking, running, climbing, lifting, pulling or pushing." *Id.* at 245. However, Dr. Misra's report failed to provide any additional information regarding how this finding would affect Plaintiff's ability to perform sedentary work as contemplated under the Act. In the instant case, both parties fail to address the critical question of how Dr. Misra, himself, defined "prolonged" standing and sitting within the context of Plaintiff's RFC. Instead, both parties' briefs cite to Social Security Rulings and case law in order to argue the meaning of "prolonged"

15

standing and sitting in the context of sedentary work under the Act. For example, the Commissioner proffers support to his argument, that sedentary work does not involve "prolonged" sitting or standing, by citing to a Second Circuit case, which finds that, "[t]he regulations do not mandate the presumption that all sedentary jobs in the Unites States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In addition, the ALJ argues that sedentary work does not require the individual to sit six hours, without moving, at one time. SSR's 83-10, 96-9p.

On the other hand, Plaintiff points to a regulation that finds that, where a medical opinion reports that an individual cannot perform "prolonged" sitting and standing, a determination that such individual can perform sedentary work is inappropriate. *See* SSR 83-12 ("In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing....Such an individual is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . .").

However, none of these arguments are relevant to the question of what Dr. Misra meant by "prolonged" sitting and standing during his evaluation of Plaintiff's RFC. By failing to accurately consider Dr. Misra's statement, regarding Plaintiff's inability to perform tasks requiring "prolonged" sitting and standing, the ALJ inappropriately substituted "his own judgment for competent medical opinion." *See Scott v. Astrue*, No. 09-CV-3999 (KAM)(RLM), 2010 WL 2736879, at *19 (E.D.N.Y. July 9, 2010) (*quoting Rosa*, 168 F.3d at 78-79). Therefore, in light of the ALJ's RFC assessment, which concluded that Plaintiff is able to perform sedentary work based on a finding that he could sit/stand with normal breaks for a total

16

of about six hours in an eight hour work day, an explanation of Dr. Misra's RFC opinion is necessary.

### B. Other Work

Finally, although the ALJ found Plaintiff's RFC of sedentary work was limited to no "postural activities," he did not consult a vocational expert in determining whether Plaintiff can perform jobs that exist in significant numbers in the national economy. A.R. at 19, 22. Instead, the ALJ relied solely on the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, to rule that Plaintiff was "not disabled." *Id.* at 22. More was required of the ALJ.

If a claimant has nonexertional limitations that "significantly limit the range of work permitted by his exertional limitations," the ALJ is required to consult with a vocational expert. *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). Here, the ALJ found that Plaintiff can perform the requirements of sedentary work "with limitation on postural activity." A.R. at 21. Nevertheless, the ALJ failed to account for this "postural activity" limitation in determining Plaintiff's ability to perform other work in the national economy. ALJ should have consulted with a vocational expert to see whether Plaintiff's postural activity limitation inhibits his abilities to do this work. Simple reference to the Medical Vocational Guidelines was not enough in this case.

## CONCLUSION

This Court finds that the ALJ's decision to deny benefits to the Plaintiff was not based upon substantial evidence in the record. On remand, the ALJ must: (1) articulate his reasoning for assigning substantial weight to Dr. Weiss's reports in light of the inconsistencies described above; (2) request an explanation and clarification from Dr. Misra concerning his October 2007

report regarding Plaintiff's RFC, employability, and disability status; and (3) consult with a vocational expert to determine if Plaintiff can perform work that exist in significant numbers in the national economy. For the foregoing reasons, this Court denies Commissioner's motion for judgment on the pleadings and remands this case for further proceedings consistent with this Memorandum and Order

**SO ORDERED.**

Dated: Brooklyn, New York
August 19, 2010

                                        s/ Judge Sandra L. Townes

                                        SANDRA L. TOWNES
                                        United States District Judge